UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NUMBER: _____

**REINALDO VELAZQUEZ,**

      **Plaintiff,**

vs.

**MIAMI-DADE COUNTY,** a political
Subdivision of the State of Florida,

      **Defendant.**

_____

**VERIFIED COMPLAINT
AND
DEMAND FOR JURY TRIAL**

Plaintiff **REINALDO VELAZQUEZ ("VELAZQUEZ")** files this Verified Complaint and sues the Defendant, **MIAMI-DADE COUNTY ("COUNTY"),** for violations of Title VII of the Civil Rights Act of 1964, Title 42 of the United States Code, Section 2000e *et seq, and the Age Discrimination Employment Act (ADEA),* based upon discrimination based upon age, race, ethnicity, and retaliation, and states as follows:

**JURISDICTION**

1. This Court has jurisdiction over the subject matter of this lawsuit under 28 U.S.C. § 1337 and Title VII of the Civil Rights Act of 1964, Title 42, United States Code, Section 2000e-16 and the Age Discrimination in Employment Act of 1967;

**CONDITIONS PRECEDENT**

2. All conditions precedent have been met, waived, or otherwise excused. **VELAZQUEZ** filed a timely Complaint with the EEOC and received a Right to Sue Letter, followed by the timely initiation of this lawsuit;

## VENUE

3. Venue is proper in the United States District Court for the Southern District of Florida in that the Plaintiff was employed by **COUNTY;**

## PARTIES

4. **VELAZQUZ,** the Plaintiff, was an employee of **MIAM-DADE COUNTY as bus operator working for the Miami-Dade Transit Authority until January, 2020;**

5. **Miami-Dade County is a Political Sub-Division of the State of Florida;**

6. At all times material, **COUNTY** was the employer of the Plaintiff within the meaning of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967;

## I. INTRODUCTION

7. **VELAZQUZ** was discriminated and retaliated against based on age, race, and ethnicity in violation of Title VII of the 1964 Civil Rights Act, as amended, and based on age in violation of the Age Discrimination in Employment Act of 1967, as amended.

## II. THE FACTS OF THE CASE

1. **VELAZQUEZ** was employed as a bus operator with **COUNTY's** Department of Transportation & Public Works;

2. **VELAZQUEZ** is an Hispanic male;

3. **VELAZQUEZ** is over the age of 60 years;

4. **VELAZQUEZ** had an excellent work record for over 15 years and there was never a legitimate, non-discriminatory reason to terminate his employment;

5. **VELAZQUEZ** was supervised by African-American Supervisors who spoke to him in a derogatory manner and treated him less favorably than they treated African-American employees;

6. **VELAZQUEZ's** treatment was based on a deliberate motive to discriminate against him based on his race and ethnicity and the County Transportation Department was aware or should have been of this discrimination and yet condoned and permitted it;

7. **VELAZQUEZ** was qualified to work as a bus driver;

8. **VELAZQUEZ** was also terminated based upon his age and **COUNTY's** desire to employ younger drivers;

9. Although **VELAZQUEZ** was terminated, **COUNTY's** Transportation & Public Works Department hired drivers under the age of 40 who were not as qualified as **VELAZQUEZ;**

10. All of the alleged reasons resulting in the discrimination of **VELAZQUEZ** constituted a pretext as there were valid no non-discriminatory reasons upon which to base the severe remedy of termination;

11. The termination of **VELAZQUEZ** and the decision to sustain his termination occurred in retaliation for his filing of an EEOC Complaint and of grievances, all of which were related to his complaints about discrimination that was illegal

under Title VII and the ADEA; thus, the County retaliated against the Plaintiff because of his Complaints about race, ethnic, and age discrimination;

12. **VELAZQUEZ** was allegedly terminated for having a verbal disagreement with an African-American supervisor. This action was taken without any of the required steps set forth in **COUNTY's** Rules of Progressive Discipline, and there was no "just cause;"

13. African-American employees under similar or identical circumstances either received no discipline, progressive discipline and /or were not terminated;

14. The Plaintiffs African-American supervisors discriminated against the Plaintiff because of his race and ethnicity and provided more favorable treatment for bus operators and other transit employees who were not Hispanic white males;

15. On one occasion, the Plaintiff went into Superintendent Wells' office, a black female and she became hostile and disparaged the plaintiff in a manner that she did not treat African American employees;

16. Dispatcher Supervisor St. Preux, of African-American decent, suspended **VELAZQUEZ** for no reason. He had arrived to perform his second piece of work and the dispatcher told him that the work had already been assigned to another operator. Mr. St. Preux took it upon himself to call the driver back and assign the work to **VELAZQUEZ,** who took the work. As he was performing his pre-trip, he noticed that the work was 15 minutes behind schedule. He did the route, even though he knew it was behind schedule; however, since it was a priority route, he wanted to write a report. When he

4

arrived at the end of the route, he asked Mr. St. Preux for his name to include in his report because at that time **VELAZQUEZ** did not know who Mr. St. Preux was. Mr. St. Pruex questioned whether **VELAZQUEZ** had his vest on, which was irrelevant because **VELAZQUEZ** was in the dispatch office and the vest was only required to be worn in the parking lot. There were many operators in the garage with jackets on because the office is cold; however, Mr. Pruex only asked **VELAZQUEZ** for his vest. He proceeded to suspend him and instructed Supervisor Wilson to remove **VELAZQUEZ** from duty for the next day. He then advised **VELAZQUEZ** to go see his superintendent the next day. Before leaving, **VELAZQUEZ** opened his jacket to show him that he was wearing his vest under his jacket. Mr. St. Preux did not have the authority to suspend him, and when he arrived the next day to speak with his superintendent, he was told that he was not suspended, that he would get paid for the day, and to report for duty as scheduled the following day;

17. **VELAZQUEZ** was verbally reprimanded because despite feeling ill he still reported for work, but his supervisor attempted to write him up. When **VELAZQUEZ** pulled into an emergency bay at the end of my route because he felt so ill, an ambulance had to be called to the site. His vitals were taken and his blood pressure was high. He was advised to go see his doctor. A Supervisor drove him to the garage, but then he had to wait for an hour and a half to be driven to the doctor. After waiting for so long, he went home and went to the doctor on my own. After discussing the incident with his Supervisor upon his return to work, the write-up did not occur because there was video evidence reviewed by Shop Steward Kevin Craig and

    **VELAZQUEZ** showing that Supervisor Juan Diaz violated major rules while operating the bus, which included talking on the phone while operating the bus and backing up without assistance. Two days later, **VELAZQUEZ** spoke with Kevin Craig to follow up and was told that General Superintendent of Bus Operations Joel Perez reviewed the tape and said that I was being retaliated against by Supervisor Juan Diaz for his complaints.

18. These actions have no justification other than discrimination because of his Hispanic heritage and age. In all of the actions listed in above, supervisors have been trying to reprimand him without just cause;

19. **VELAZQUEZ** is in the possession of the disciplinary action reports of other African-American employees that performed acts severely more egregious than those for which **VELAZQUEZ** was falsely accused, and the worst discipline received by any of those African-American employees was a 30-day suspension, along with a "Last Chance Agreement," and they were back on the job. None were ever terminated;

20. On January 6, 2020, **VELAZQUEZ** was terminated from his position as a bus operator by Defendant **MIAMII-DADE COUNTY's** Department of Transportation and Public Works (DTPW);

21, When the Plaintiff was stationed in the Coral Way Garage, which is a more diverse garage because of the demographics of the community, there were never any issues. Upon arriving at the Central Bus Garage, which is predominately an African-American majority demographic, **VELAZQUEZ** began getting increased calls to see his Supervisor, who was African American.

22. On April 5, 2019, **VELAZQUEZ** was performing his first piece of work when

he was delayed in traffic. He would normally need to be relieved at the end of the line, then catch the bus going back to the garage to begin his second piece of work. If he is even ten minutes late, he would miss the bus going back to the garage, so this was not a one-time occurrence. On one particular day, the bus he rode going back to the garage had an accident enroute, furthering the delay through no fault of his own. When arriving at the garage, he was told to go see the Superintendent to sign his green sheet (late payment form). This is part of the normal process when the second piece of work has already been assigned to a driver on the board. **VELAZQUEZ's** regular Supervisor, Mr. Orlando Aleman, was not present at the time and only Ms. Sandra Wells was at the office. As **VELAZQUEZ** approached, there was an African-American bus operator standing at the doorway to her office. He had a similar situation as **VELAZQUEZ** had experienced, and Ms. Wells signed that driver's sheet without incident. As **VELAZQUEZ** approached, Ms. Wells' demeanor changed immediately. Similar to the driver before him, he asked her to please sign his green sheet. Her response was abrasive, and she stated, "You know, if it was up to me, I would take away the second piece of work and send you back to the board." **VELAZQUEZ** asked her if she were treating him so poorly because he had brought up concerns about this incident.  He asked her to check his video to see if he did anything wrong, but there was no reasoning with Ms. Wells. As the conversation escalated, **VELAZQUEZ** stated that this discriminatory treatment was unfair and that he was going to go talk with the Chief. At that time, Ms. Wells stated, "Are you trying to intimidate me?" **VELAZQUEZ** replied, "No. Are you try to intimidate  me?"  While walking out of Ms. Wells' office to go to Chief Achinah's office, she followed him and Supervisor Gilbert had to physically restrain Ms. Wells from attacking him. She de-escalated the situation and **VELAZQUEZ** was asked to go home. An hour later, **VELAZQUEZ**

was called and relieved of duty pending an investigation.

## COUNT I.
## RACE AND ETHNIC BASED DISCIMINAITON (TITLE VII)

23. Plaintiff re-alleges paragraphs 1 through 22 as if fully set forth herein;

**24. Plaintiff was received adverse action and was terminated because of discrimination based on his race and ethnicity;**

**25. As a result, the Plaintiff has been damaged.**

*WHEREFORE*, **the Plaintiff demands an award of damages, including compensatory damages, attorneys' fees and costs and any other relief under the law.**

## COUNT II.
## DISCRIMINATION BASED ON AGE IN VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967

26. Plaintiff re-alleges paragraphs 1 through 25 as if fully set forth herein;

**27. VELAQUEZ** is a 60-year-old male, and the **COUNTY** willfully discriminated against him due to his age by intentionally firing him because of his age and then retaining and/or hiring younger and less qualified individuals;

38. As a direct and proximate result of said discrimination by **COUNTY,** Plaintiff has suffered damages.

*WHEREFORE,* Plaintiff demands judgment for damages against the **COUNTY,** including but not limited to compensatory damages, back pay and benefits, future pay and benefits, liquidated damages, punitive damages, prejudgment interest, and attorney's fees and

costs, and other available relief as the Court deems just and proper.

## COUNT III.
## RETALIATION IN VIOLATION OF TITLE VII

29. Plaintiff re-alleges paragraphs 1 through 28 above as if fully set forth herein;

30. Plaintiff engaged in protected activities in the form of filing a Complaint;

31. As a direct and proximate result of his engaging in protected activities and in direct retaliation for his engaging in his protected activities, the Plaintiff was subjected to adverse employment action in a tangible way, denial of employment opportunities, and deprivation of benefits and termination;

32. As a direct and proximate result, Plaintiff has suffered permanent damages.

*WHEREFORE,* Plaintiff demands judgment for damages against the **COUNTY,** including but not limited to compensatory damages, back pay and benefits, future pay and benefits, liquidated damages, punitive damages, prejudgment interest, and attorney's fees and costs, and other available relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues triable as of right by jury.

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that I have read the Complaint and the foregoing facts are true and correct.

_____
REINALD

9

**REINALDO VELAZQUEZ**

Dated this 28th day of **April,** 2020, **by Reinaldo Velazquez, Plaintiff**

Respectfully submitted,

**Michael A. Pizzi, Jr., Esq.**
Florida Bar No. 079545
Attorney for Plaintiff
6625 Miami Lakes Drive - Suite 316 Miami Lakes, FL  33014
Telephone:   (305) 986-2277
Fax:               (305) 777-3802
E-Mail:          mpizzi@pizzilaw.com

By: *s/s Michael A. Pizzi, Jr.*

**Michael A. Pizzi, Jr., Esq.**